Debora L. Verdier (AZ 018676)
dverdier@cavanaghlaw.com
**THE CAVANAGH LAW FIRM, P.A.**
1850 North Central Avenue, Suite 1900
Phoenix, Arizona 85004
Telephone: (602) 322-4000
Facsimile: (602) 322-4100

Stephen M. Ferguson (*pro hac vice* to be filed)
stephen.ferguson@hnbllc.com
**HAGAN NOLL & BOYLE LLC**
820 Gessner, Suite 940
Houston, Texas 77024
Telephone: (713) 343-0478
Facsimile: (713) 758-0146

*Attorneys for Plaintiffs DISH Network L.L.C.*
*and Sling TV L.L.C.*

### IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF ARIZONA

| | |
|---|---|
| DISH NETWORK L.L.C. and SLING TV L.L.C.,<br><br>Plaintiffs,<br><br>v.<br><br>MOSES ANTHONY VALENZUELA, TV TECHNOLOGIES LLC, and THE TECHNOLOGY & MEDICAL STORE INC.,<br><br>Defendants. | Case No.<br><br><br>**PLAINTIFFS' COMPLAINT** |

Plaintiffs DISH Network L.L.C. and Sling TV L.L.C. file this action against Defendants Moses Anthony Valenzuela, TV Technologies LLC, and The Technology & Medical Store Inc., for violations of the anti-trafficking provisions of the Digital Millennium Copyright Act ("DMCA") and the Electronic Communications Privacy Act ("ECPA"). Defendants provide and profit from the sale of illicit streaming services that

capture and retransmit Plaintiffs' copyrighted television programming, without authorization, by circumventing Plaintiffs' security measures.

**PARTIES**

1.     Plaintiff DISH Network L.L.C. ("DISH") is a Colorado limited liability company having its principal place of business in Englewood, Colorado.

2.     Plaintiff Sling TV L.L.C. ("Sling") is a Colorado limited liability company having its principal place of business in Englewood, Colorado.

3.     Defendant Moses Anthony Valenzuela ("Valenzuela") is an individual residing in Tucson, Arizona.  Valenzuela is the sole member of TV Technologies LLC and the sole officer and director of The Technology & Medical Store Inc.  Valenzuela operates TV Technologies LLC and The Technology & Medical Store Inc., which he used to process payments in connection with the set-top boxes and infringing services at issue.

4.     Defendant TV Technologies LLC is an Arizona limited liability company having its principal office address located at 6418 S. Acacia Desert Avenue, Tucson, Arizona 85706.

5.     Defendant The Technology & Medical Store Inc. was a corporation organized and existing under the laws of the State of Arizona, and had its principal place of business located at 6418 South Acacia Desert Avenue, Tucson, Arizona 85706.

**JURISDICTION AND VENUE**

6.     The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiffs assert claims for violations of the DMCA, 17 U.S.C. § 1201 and the ECPA, 18 U.S.C. § 2511.

7.     Defendants are subject to personal jurisdiction in this Court pursuant to Fed. R. Civ. P. 4(k)(1)(A) because Defendants reside in Arizona and, through their wrongful conduct identified herein, Defendants purposefully directed their conduct towards and purposefully availed themselves of the privileges of conducting business in Arizona, causing injury to Plaintiffs in Arizona.

8.      Venue is proper in this Court under 28 U.S.C. § 1391 because Defendants reside in this judicial district and a substantial part of the events giving rise to Plaintiffs' claims occurred in this judicial district.

<strong>DEFENDANTS' REBROADCASTING SCHEME</strong>

9.      Plaintiffs provide television programming to millions of authorized, fee-paying subscribers of their Sling TV and DISH Anywhere services in the United States using the internet.  Plaintiffs acquire the distribution rights to provide the programming pursuant to license agreements between DISH and various rights holders.  The programming consists of live channels and on demand content and is subject to copyright protections.  Plaintiffs' live channels, whether intended for Sling TV subscribers or DISH Anywhere subscribers, are transmitted over the internet using the same Sling streaming platform ("Channels").

10.      Plaintiffs implement digital rights management ("DRM") technology, with the rights holders' consent, to protect the Channels from unauthorized access, copying and retransmission.  Each DRM technology uses a key-based subscriber authentication and encryption-decryption process to make the Channels accessible to only authorized subscribers that purchase access to the Channels from Plaintiffs and restricts unauthorized access to, copying, and retransmission of the Channels.

11.      Defendants trafficked in the illicit internet streaming television services that are accessed using the vSeeBox and Tanggula set-top boxes (the "Services") through their website located at Usamediabox.com ("Website"), Amazon store called StreamStore2020 ("Amazon Store"), Walmart store called Streamgenietv Technology & Medical Store INC ("Walmart Store"), eBay store called thetechstore2020 ("eBay Store"), and at the Mobility Plus Green Valley store located at 101 South La Canada Drive, Suite 67, Green Valley, Arizona 85614.

12.      The Website offered the vSeeBox and Tanggula set-top boxes and had links to the vSeeBox and Tanggula set-top boxes that were sold on the Amazon Store, Walmart Store, and eBay Store.

**PLAINTIFFS' COMPLAINT**

13. Defendants sell the Services for a one-time cost of approximately $299 to $399, depending on the hardware selected by the user.

14. Plaintiffs' investigator purchased a Tanggula set-top box from Defendants for $399 by visiting the Website and clicking on a link to a Tanggula set-top box that was sold to the investigator through the Walmart Store.

15. Plaintiffs received the Tanggula set-top box, tested it, and confirmed that the Services intercepted and transmitted Plaintiffs' Channels without authorization.

16. Identifiers that are unique to Plaintiffs' internet transmissions of the Channels were detected when conducting a technical analysis of the corresponding channels on the Services, thereby confirming that channels transmitted on the Services originated from Plaintiffs. Monitoring conducted on a sampling of channels on the Services showed numerous instances where Plaintiffs' Channels were being retransmitted to users of the Services without Plaintiffs' authorization. Plaintiffs' internet transmissions of the Plaintiffs' Channels on the Services include the following by way of example: AMC Thrillers, BET, Big Ten Network, Bon Appetit, Fawesome, FETV, Fox Business, Fox News, Free Speech TV, Hi-YAH!, Laff, Law & Crime, Lifetime Movie Network, Magnolia Network, Maverick Black Cinema, MLB Network, MLB Strike Zone, NFL Network, Pac-12 Los Angeles, Pac-12 Mountain, Pac-12 Washington, PixL, PlayersTV, Supercanal Caribe, TBN, Telemicro Internacional, The Design Network, The Film Detective, and World Fishing Network.

17. Plaintiffs' Channels are retransmitted to users of the Services by circumventing the Widevine DRM. The Widevine DRM controls access to Plaintiffs' Channels by requiring Plaintiffs' subscriber to present a valid digital authentication key and license request to Sling's Widevine DRM server to obtain the channel decryption key necessary to unlock a specific Channel. The channel decryption key is provided to Plaintiffs' subscriber in an encrypted communication and upon receipt is not exposed to the subscriber but rather is secured in the content decryption module of the subscriber's Widevine supported device. In addition, the Widevine DRM protects against copying of

**PLAINTIFFS' COMPLAINT**

Plaintiffs' Channels in the ordinary course of its operation by requiring that the encrypted audio-visual segments that make up a Channel are unlocked using the channel decryption key and complied to form the Channel within the confines of the content decryption module, such that Plaintiffs' subscribers can only view the Channel and not retransmit the Channel.

18.     The Widevine DRM and the protection it affords is circumvented using a specially developed computer program that emulates the behavior of a reverse engineered hardware device. The computer program tricks Sling's Widevine DRM server to grant access and provide a channel decryption key by making the server believe the request originated from a legitimate Widevine supported device that would keep the channel decryption key secured (though in reality the request came from the computer program mimicking the reverse engineered hardware). The computer program uses the channel decryption key to unlock the encrypted audio-visual segments that make up the Channel and then compiles the segments to form an unencrypted Channel that is capable of being copied and retransmitted (as opposed to being merely viewed). The unencrypted Channel can be uploaded to a server outside of the Sling platform and retransmitted to any number of users that can receive the Channel without purchasing a legitimate subscription from Plaintiffs.

19.     Upon information and belief, users of the Services are able to receive Plaintiffs' Channels because the Widevine DRM used to protect the Channels from unauthorized access and copying is being circumvented as described above. Additional content provided on the Services is believed to be acquired from other legitimate pay-television providers that use the Widevine DRM through this process of circumvention, which enables the Services to offer thousands of channels and tens of thousands of on-demand programs at a small fraction of the cost charged by legitimate providers that pay to license their content such as Plaintiffs.

20.     Defendants were notified of their violations of the DMCA and ECPA and asked to cease and desist from selling, operating, participating in, or supporting the Services, but the Services have continued to operate.

**PLAINTIFFS' COMPLAINT**

## CLAIMS FOR RELIEF

## COUNT I

### Violations of the DMCA, 17 U.S.C. § 1201(a)(2)

21.    Plaintiffs repeat and reallege the allegations in paragraphs 1-20.

22.    Plaintiffs use DRM technology to effectively control access to their Channels that include works protected under the Copyright Act.  Plaintiffs are authorized by the copyright owners to control access to the Channels and implement the DRM technology with their consent.

23.    Plaintiffs' DRM technology is circumvented to gain access to Plaintiffs' Channels that are retransmitted without authorization to users of the Services.  Upon information and belief, the circumvention targets Plaintiffs' Widevine DRM and represents an essential component or part of the Services.

24.    The Services, or at least the component or part of the Services that involve gaining unauthorized access to Plaintiffs' Channels, are primarily designed and produced for the purpose of circumventing the DRM technology that Plaintiffs implement and have no commercially significant purpose or use other than circumventing such DRM technology.

25.    Defendants violate 17 U.S.C. § 1201(a)(2) by manufacturing, offering to the public, providing, or otherwise trafficking in the Services.  Each sale of the Services constitutes a separate violation of 17 U.S.C. § 1201(a)(2).

26.    Defendants' actions violating 17 U.S.C. § 1201(a)(2) were performed without the authorization or consent of Plaintiffs or, upon information and belief, any owner of the copyrighted works provided by Plaintiffs.

27.    Defendants' violations of 17 U.S.C. § 1201(a)(2) were willful. Such violations have damaged Plaintiffs in an amount to be proven at trial. Unless restrained and enjoined, Defendants will continue to violate 17 U.S.C. § 1201(a)(2).

6                           **PLAINTIFFS' COMPLAINT**

## COUNT II

### Violations of the DMCA, 17 U.S.C. § 1201(b)(1)

28.    Plaintiffs repeat and reallege the allegations in paragraphs 1-27.

29.    Plaintiffs use DRM technology to effectively control copying of their Channels that include works protected under the Copyright Act.  Plaintiffs are authorized by the copyright owners to control copying of the Channels, including distribution and public performance through acts of retransmission, and implement the DRM technology with their consent.

30.    Plaintiffs' Channels are retransmitted without authorization to users of the Services by circumventing Plaintiffs' DRM technology.  Upon information and belief, the circumvention targets Plaintiffs' Widevine DRM and represents an essential component or part of the Services.

31.    The Services, or at least the component or part of the Services involving unauthorized retransmission of Plaintiffs' Channels to users of the Services, are primarily designed and produced for the purpose of circumventing the protection afforded by the DRM technology that Plaintiffs implement and have no commercially significant purpose or use other than circumventing such protection.

32.    Defendants violate 17 U.S.C. § 1201(b)(1) by manufacturing, offering to the public, providing, or otherwise trafficking in the Services.  Each sale of the Services constitutes a separate violation of 17 U.S.C. § 1201(b)(1).

33.    Defendants' actions violating 17 U.S.C. § 1201(b)(1) were performed without the authorization or consent of Plaintiffs or, upon information and belief, any owner of the copyrighted works provided by Plaintiffs.

34.    Defendants' violations of 17 U.S.C. § 1201(b)(1) were willful.  Such violations have damaged Plaintiffs in an amount to be proven at trial.  Unless restrained and enjoined, Defendants will continue to violate 17 U.S.C. § 1201(b)(1).

**PLAINTIFFS' COMPLAINT**

## COUNT III

### Violations of the ECPA, 18 U.S.C. §§ 2511(1)(c), (d), and 2520

35.    Plaintiffs repeat and reallege the allegations in paragraphs 1-34.

36.    The Channels retransmitted on the Services are electronic communications intercepted from Plaintiffs for purposes of committing violations of the DMCA, ECPA, and other tortious acts.

37.    Defendants were notified of their violations of the DMCA and ECPA and asked to cease and desist, but the Services have continued to operate.

38.    By continuing to sell or activate the Services, Defendants intentionally disclosed or used Plaintiffs' Channels, knowing or having reason to know that they were obtained through interception.

39.    Defendants violated 18 U.S.C. §§ 2511(1)(c), (d), and 2520 for tortious and illegal purposes, or for commercial advantage or private financial gain.

40.    Defendants' violations of 18 U.S.C. §§ 2511(1)(c), (d), and 2520 were intentional, and therefore illegal and prohibited. Such violations have damaged Plaintiffs in an amount to be proven at trial.  Unless restrained and enjoined, Defendants will continue to violate 18 U.S.C. §§ 2511(1)(c), (d), and 2520.

### PRAYER FOR RELIEF

Plaintiffs request a judgment against Defendants as follows:

A.    For a permanent injunction, as authorized by Fed. R. Civ. P. 65, 17 U.S.C. § 1203(b)(1), and 18 U.S.C. § 2520(b)(2), that prohibits Defendants, and any officer, agent, servant, employee, or other person acting in active concert or participation with them that receives actual notice of the order, from:

1.    manufacturing, offering to the public, providing, or otherwise trafficking in the Services, vSeeBox and Tanggula set-top boxes, or any other technology, product, service, device, component, or part thereof that:

a.    is primarily designed or produced for circumventing any DRM technology or other technological measure that Plaintiffs use to control access

8                              **PLAINTIFFS' COMPLAINT**

to or protect against copying of a copyrighted work;

b.      has at best only limited commercially significant purpose or use other than circumventing any DRM technology or other technological measure that Plaintiffs use to control access to or protect against copying of a copyrighted work; or

c.      is marketed for circumventing any DRM technology or other technological measure that Plaintiffs use to control access to or protect against copying of a copyrighted work;

2.      intentionally disclosing, endeavoring to disclose, using, or endeavoring to use Plaintiffs' Channels knowing or having reason to know that they were obtained through interception.

B.      For an order awarding the greater of: (1) Plaintiffs' actual damages together with Defendants' profits that are attributable to the violations identified in Count I and Count II, or (2) statutory damages up to $2,500 for each violation identified in Count I or Court II, pursuant to 17 U.S.C. § 1203(c)(2) and (c)(3)(A);

C.      For an order awarding the greater of: (1) Plaintiffs' actual damages together with Defendants' profits that are attributable to the violations identified in Count III, or (2) statutory damages of whichever is the greater of $100 per day for each day of violation or $10,000, pursuant to 18 U.S.C. § 2520(c)(2);

D.      For an order awarding Plaintiffs punitive damages pursuant to 18 U.S.C. § 2520(b)(2);

E.      For an order awarding Plaintiffs their attorneys' fees and costs under 17 U.S.C. § 1203(b)(4)-(5) and 18 U.S.C. § 2520(b)(3);

F.      For an accounting of all profits and other benefits that Defendants received from the wrongful conduct identified in this complaint;

G.      For pre and post-judgment interest on all damages awarded by the Court, from the earliest date permitted by law at the maximum rate permitted by law; and

H.      For such additional relief as the Court deems just and equitable.

9                                    **PLAINTIFFS' COMPLAINT**

**RESPECTFULLY SUBMITTED** this 7th day of June, 2024.

By: /s/ *Debora L. Verdier*
Debora L. Verdier (AZ 018676)
dverdier@cavanaghlaw.com
**THE CAVANAGH LAW FIRM, P.A.**
1850 North Central Avenue, Suite 1900
Phoenix, Arizona 85004
Telephone: (602) 322-4000

Stephen M. Ferguson (*pro hac vice* to be filed)
stephen.ferguson@hnbllc.com
**HAGAN NOLL & BOYLE LLC**
820 Gessner, Suite 940
Houston, Texas 77024
Telephone: (713) 343-0478
Facsimile: (713) 758-0146

*Attorneys for Plaintiffs DISH Network L.L.C. and*
*Sling TV L.L.C.*

10                                        **PLAINTIFF'S COMPLAINT**